Carolyn B. **RAETZEL** and Raymond F. **Raetzel**, Plaintiffs,

v.

**PARKS/BELLEMONT ABSENTEE ELECTION BOARD; Jim Shumway, Secretary of State of Arizona; and Coconino County, Defendants.**

No. CIV 89–1160–PCT–RGS.

United States District Court, D. Arizona.

Aug. 20, 1990.

Paul F. Eckstein, Brown & Bain, Louis J. Hoffman, Lisa & Lisa, Phoenix, Ariz., for plaintiffs.

John Verkamp, Flagstaff, Ariz., John B. Shadegg and Lisa Tewksbury Hauser, Asst. Attys. Gen., Phoenix, Ariz., for defendants.

## MEMORANDUM AND ORDER

STRAND, District Judge.

### INTRODUCTION

This lawsuit challenges Arizona's procedure for the processing of absentee ballots.

Plaintiffs base their Motion for Summary Judgment on claims that their procedural due process rights were violated when they were not afforded notice and a hearing with respect to an Election Board's determination that they were not qualified voters for the 1988 general election. Plaintiffs seek: 1) a declaration that portions of Arizona Revised Statute § 16–552 and certain rules promulgated pursuant to that section violate the fourteenth amendment of the Constitution; 2) a permanent injunction requiring defendants to notify plaintiffs of challenges to their voter qualification; and 3) attorneys' fees and costs. Defendants oppose this Motion, and in turn, filed their own Motions for Summary Judgment arguing plaintiffs have no standing to bring this suit because they were not legally entitled to vote in the subject election. The court will resolve the question of standing before considering the issue of due process.

### STANDING TO SUE

The concept of standing relates to the nature and sufficiency of a litigant's concern with the subject matter of the action. In *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Court stated the issue of standing relates to "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206. Standing also measures the plaintiff's claim against certain constitutional and prudential limitations with regard to access to federal courts. *National Wildlife Federation v. Buford,* 871 F.2d 849 (9th Cir. 1989).

There are three elements or requirements of standing. The plaintiff must show: 1) an actual or threatened injury; 2) which is fairly traceable to the defendant's alleged, illegal activity; and 3) which is likely to be redressed by the requested relief. *Valley Forge Christian College v. Americans for Separation of Church and State,* 454 U.S. 464, 473, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Alaska Fish & Wildlife Fed. v. Dunkle,* 829 F.2d 933, 937, (9th Cir.1987) *cert. denied,* 485 U.S. 988, 108 S.Ct. 1290, 99 L.Ed.2d 501 (1988).

In this instance, plaintiffs are alleging a denial of basic tenets of procedural

due process. This claim arises not from a denial of their right to vote, but from the apparent lack of notice and a hearing prior to their absentee votes being disqualified. Plaintiffs allege defendants are responsible for the denial of these rights and seek relief which would prevent a similar occurrence during a future election.

The court concludes plaintiffs suffered an actual, legally cognizable injury, in that they were not afforded notice or the opportunity to contest the loss of their vote. Should the court conclude the Arizona statute which controls the manner in which absentee ballots are challenged unconstitutional, plaintiffs' injury is redressable. Therefore, plaintiffs have satisfied the three prong test for standing.

Defendants argue, in support of their Motions for Summary Judgment, that plaintiffs have not established they are residents of Coconino County for voting purposes. As such, defendants contend plaintiffs lack standing to bring a challenge to the Arizona statute. Defendants, however, are engaging in a "tail chase." Defendants would have the court conclude plaintiffs lack standing to challenge the alleged denial of due process because plaintiffs cannot prove they are residents. In other words, defendants argue that because plaintiffs are not residents entitled to vote, they are not afforded an opportunity to contest such a determination by the Election Board.

Such analysis might be appropriate if plaintiffs were claiming a *denial of their right to vote*. This is not the case, however, and defendants mischaracterize the nature of the injury alleged in the complaint. The complaint does not seek redress for the *decision* that the Raetzels are not Coconino County residents for voting purposes. Plaintiffs are contesting the *procedure* which determined their lack of eligibility to vote and further contend that this procedural defect was the cause of injury to each of them.[1]

When a person is denied the procedural opportunity to influence an administrative decision, standing is based on the denial of that right, even if that decision would not have been affected. *McClelland v. Massinga*, 786 F.2d 1205, 1210 (4th Cir. 1986); *Trustees for Alaska v. Hodel*, 806 F.2d 1378, 1380 (9th Cir.1986). Residency would be the appropriate measuring stick of standing if the plaintiffs were alleging injury based on the Election Board's decision to disqualify their votes. Standing in this matter is determined by the fact that the Raetzels were registered in Parks, Arizona, and were denied notice and a hearing to contest the Election Board's decision.

Defendants' argument also suggests that plaintiffs have to establish their substantive assertion, residency, prior to any entitlement to procedural due process. The argument is unavailing as "the right to procedural due process ... does not depend on the merits of a claimant's substantive assertions." *Carey v. Piphus*, 435 U.S. 247, 267, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978); *see also Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Under the facts of this case, the allegation of a denial of procedural due process provides the plaintiffs with standing.

### DENIAL OF PROCEDURAL DUE PROCESS

There is no dispute regarding the Raetzels' lack of notice and a hearing in connection with the disqualification of their votes. Defendants readily acknowledge that Arizona Revised Statute § 16–552 does not provide for notice and a hearing during a challenge to an absentee ballot. Therefore, this issue regarding whether the Raetzels received notice from the Election Board or County Registrar's Office is not in dispute.

### CONSTITUTIONALITY OF THE ARIZONA STATUTE

Voting is a fundamental right. The Supreme Court has stated that "[n]o right is more precious in a free country than having a voice in the election of those who

---

1. Defendants admit the Raetzels suffered actual injury when their votes were disqualified: "Admittedly, the Raetzels' votes were not counted in the 1988 November general election which is an actual injury." [See December 8, 1989 Memoranda of the County, at 7]

make the laws under which, as good citizens, we must live." *Reynolds v. Sims,* 377 U.S. 533, 560, 561–562, 84 S.Ct. 1362, 1380, 1381–1382, 12 L.Ed.2d 506 *reh'g denied,* 379 U.S. 870, 85 S.Ct. 12, 13 L.Ed.2d 76 (1964) (citations omitted). Because voting is a fundamental right, the right to vote is a "liberty" interest which may not be confiscated without due process. *United States v. Texas,* 252 F.Supp. 234, 250 (W.D. Tex.), *aff'd mem. per curiam,* 384 U.S. 155, 86 S.Ct. 1383, 16 L.Ed.2d 434 (1966).

Arizona Revised Statute § 16–551 outlines the creation of the Absentee Ballot Election Board. Subdivision A of A.R.S. § 16–551 indicates that the Board of Supervisors shall appoint one or more absentee election boards to serve at various locations to tally absentee ballots. A.R.S. § 16–551, Subd. A. The Board shall consist of at least one inspector and two judges "who shall perform the processing requirements in accordance with the rules and regulations issued by the Secretary of State." A.R.S. § 16–551, Subd. B. All absentee ballots received shall be delivered and processed by the designated absentee election board pursuant to state law. A.R.S. § 16–551, Subd. C.

Arizona Revised Statute § 16–552 sets forth the procedure to be followed in processing and considering challenges to absentee ballots. Subdivision B of § 16–552 grants the Absentee Election Board the authority to review the voter's application and affidavit against the precinct registration to determine if the vote should be counted. If the Board determines the voter "a duly qualified elector of the voting precinct," the vote will be allowed. A.R.S. § 16–552, Subd. B. The vote will not be allowed if the application or affidavit is

insufficient, or if the applicant is not a duly qualified elector of the voting precinct. A.R.S. § 16–552 Subd. B.

Subdivision D of the statute provides for challenges to an absentee ballot for various reasons including that the individual is not the person registered on the voting rolls or has already voted in the subject election, that the voter has not resided within the state or particular precinct for 50 days prior to that election, or any other reasonable grounds. A.R.S. §§ 16–591, 16–552, Subd. D.[2]

Arizona Revised Statute § 16–552 Subd. D states the grounds for all challenged absentee votes will be heard by the Board and determined by majority vote. The only notice envisioned by the statute is to provide notice of a disqualified vote to the county chairmen of each political party, provided the challenge was made in writing. There is no direct notice provided to the individual whose vote is orally challenged and then disqualified. Under the present statutory scheme, a voter whose vote is orally challenged and disqualified will remain unaware of the disqualification. This result is also possible if notice is derivative through the political party, and the political party fails to notify the voter. There is no requirement that the political party notify such an individual.

Arizona Revised Statute § 16–552 subdivision F provides that if the Board determines by majority vote that the vote will not be counted, the affidavit envelope containing the ballot is not opened and the reason for the rejection is written across the front of the envelope. The affidavit envelope and its contents are deposited and preserved with the official election materi-

---

**2.** Subdivision D of § 16–552 provides in full,

An absentee ballot may be challenged on any grounds set forth in § 16–591 for challenging electors or for suspected fraudulent use of the absentee ballot or any other reasonable ground. All challenges shall be made prior to the absentee ballot being placed in the ballot box. A record of all challenges and resulting procedures shall be kept in substantially the same manner as provided in § 16–594. If an absentee ballot is challenged, it shall be set aside until all the remaining absentee ballots for that precinct have been properly pro-

cessed at which time the absentee election board shall hear the grounds for the challenge and shall decide what disposition shall be made of the absentee ballot by majority vote. If the absentee ballot is not allowed, it shall be handled pursuant to subsection F of this section. In the event a challenge is made in writing prior to the time such ballot is processed, the absentee election board shall give notice of the consideration of the challenge to the county chairman of each political party represented on the ballot prior to such hearing.

als. The disqualified voter may never ascertain the justification for the rejection of their vote in order to cure the defect for future eligibility.

"For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" *Fuentes v. Shevin,* 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). The right to notice and the opportunity to be heard "must be granted at a meaningful time." *Fuentes,* 407 U.S. at 81, 92 S.Ct. at 1994; *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). This "meaningful time" has not always commanded prior notice and a hearing. *Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews,* 424 U.S. at 335, 96 S.Ct. at 902, (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). It is possible to provide post-deprivation notice and hearing, and have the statutory scheme comport with procedural due process. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 902.

■ In this instance, the court has identified the important fundamental interest in voting, but notes that voting absentee, is a privilege and a convenience for those unable to vote in person. *Prigmore v. Renfro,* 356 F.Supp. 427, 432 (N.D.Ala. 1972), *aff'd* 410 U.S. 919, 93 S.Ct. 1369, 35 L.Ed.2d 582 (1973). Yet, such a privilege is deserving of due process. Such due process is not provided when the election procedures do not give some form of post-deprivation notice to the affected individual so that any defect in eligibility can be cured and the individual is not continually and repeatedly denied so fundamental a right.

■ The State, however, has a legitimate concern to limit the fraud potential in absentee voting and may conduct elections in a manner consistent with the Equal Protection Clause. *Bullock v. Carter,* 405 U.S. 134, 141, 92 S.Ct. 849, 854–55, 31 L.Ed.2d 92 (1972). While it is true that absentee voting is a privilege and a convenience to voters, this does not grant the state the latitude to deprive citizens of due process with respect to the exercise of this privilege. While the state is able to regulate absentee voting, it cannot disqualify ballots, and thus disenfranchise voters, without affording the individual appropriate due process protection. The deficiency in the existing election process is the absence of any procedure which furnishes post-deprivation notice to an individual whose absentee ballot has been disallowed, advising the individual of the disqualification and the reason therefore, and providing some means for the individual to make his or her position on the issue a matter of record before the appropriate election official.

■ In view of the foregoing, the court finds and concludes that Arizona's procedure for processing challenges to absentee ballots does not comport with the constitutional requirements of due process. The court does not find that plaintiffs are entitled to equitable relief of a unique nature for their singular benefit. Further, notwithstanding the fact that plaintiffs have suffered injury by virtue of the manner in which their absentee ballots were processed, the court does not conclude that said parties are entitled to an award of economic damages, nominal or otherwise.

Accordingly,

IT IS ORDERED granting in part and denying in part Plaintiffs' Motion for Summary Judgment.

IT IS FURTHER ORDERED denying Defendants' Cross–Motions for Summary Judgment.

FURTHER ORDERED that the court's orders entered herein shall not become effective until 90 days from the date hereof and shall thereafter have prospective effect only.

FURTHER ORDERED granting Plaintiffs leave to file an application for an award of attorneys' fees and costs.