Joseph A. BELL, et al., Plaintiffs

v.

Christopher M. MARINKO,
et al., Defendants

No. 3:02CV7204.

United States District Court,
N.D. Ohio,
Western Division.

Oct. 22, 2002.

Jack G. Haught, Benesch, Friedlander, Coplan & Aronoff, Columbus, OH, for Plaintiffs.

Joan C. Szuberla, Teresa L. Grigsby, Theodore M. Rowen, Spengler Nathanson, Toledo, OH, Terry R. Griffith, Office of Prosecuting Atty., Sandusky, OH, Arthur J. Marziale, Jr., Office of Atty. Gen., Elizabeth Luper Schuster, Office of Atty. Gen., Columbus, OH, Defendants.

Warner D. Mendenhall, Akron, OH, for Movant.

## ORDER

CARR, District Judge.

This is a civil rights suit by registered electors of the Kelleys Island precinct in Erie County, Ohio, whose qualifications to be registered in that precinct were challenged. Plaintiffs' second amended complaint alleges that those challenges and their consideration, and, as to some of the named plaintiffs, unfavorable adjudication: 1) contravened the National Voting Rights Act of 1965, 42 U.S.C. § 1973gg *et seq.* (VRA); 2) denied, as a result of application of § 3503.02(D) of the Ohio Revised Code, equal protection of the laws; 3) in light of that violation, constituted disparate treatment in violation of, 42 U.S.C. § 1971(a)(2)(A); 4) denied due process of law; and 5) violated O.R.C. § 3503.21(C).

The named plaintiffs are Joseph A. Bell, Frederic C. Walcott, Keith F. Haig, Timothy L. Ahner, Kim G. Fresch, Paul S. Finnegan, and Victoria J. Finnegan. Each registered to vote in the Kelleys Island precinct. Each has a residence on Kelleys Island, and, as well, other residential premises elsewhere. The gravamen of the challenge to their qualifications, which was brought by other electors registered to vote in that precinct, was that the Kelleys Island premises were occupied by the plaintiffs on a transient (i.e., seasonal), rather than permanent, basis.

The individual defendants, Christopher M. Marinko, Ralph Henry, David E. Giese, and Clarence W. Seavers, are members, sued in their official capacities, of the Erie County Board of Elections (the Board). The Secretary of State for the State of Ohio, J. Kenneth Blackwell, has been joined as a defendant.

Due to the presence of a challenge to the constitutionality of O.R.C. § 3503.02(D), the plaintiffs were ordered on May 3, 2002, to join the Ohio Attorney General as a party. They have not done so.

All defendants have moved for summary judgment, and the plaintiffs have filed a cross-motion for summary judgment. For the reasons that follow, the defendants' motions shall be granted, and the plaintiffs' motion shall be denied.

## BACKGROUND

Residents of Kelleys Island filed their challenges to plaintiffs' qualifications, as well as the qualifications of several other electors, in late February, 2002. The Board promptly notified the challenged electors, including the plaintiffs, of the filing of the challenges. The Board scheduled hearings for April 1, 2002, to inquire into the merits of the challenges. Hearings commenced on that date, but were completed only as to eight of the challenges, none of which involved any of the named plaintiffs. The Board scheduled further hearings for April 26–27.

In the meantime, on April 19, 2002, plaintiffs filed their complaint, along with a motion for a temporary restraining order. They desired to protect their ability to vote in a primary election scheduled for early May.

The motion for a temporary restraining order was granted in part and denied in part on April 25, 2002. That order, which granted temporary relief as to plaintiff Bell only, was based on my perception that there was a substantial likelihood that he would prevail on his challenge to § 3503.02(D). I found no such likelihood with regard to the plaintiffs' other claims.

Further hearings before the Board continued to be held. Plaintiffs claim that these hearings did not afford them the requisite degree of due process and con-travened their rights of privacy by inquiring into personal matters in the guise of ascertaining their permanent residences.

The Board concluded that plaintiff Bell was properly registered. It sustained the challenges to plaintiffs Walcott, Haig, Ahner, and Fresch.

The Board tied 2–2 with regard to the plaintiffs Paul S. and Victoria J. Finnegan. As a result of the tie, that challenge was referred, pursuant to Ohio law, to the defendant Blackwell. He upheld the challenge to the Finnegans. As a result of that action, plaintiffs filed their second amended complaint, naming Secretary Blackwell as a defendant. In addition, two additional plaintiffs were also joined, because the Secretary had ruled on the challenges to their qualifications after the Board had tied 2–2.

Plaintiffs assert that this court has subject matter jurisdiction over the claims asserted herein because their complaint alleges federal questions relating to the application of the VRA and challenges the constitutionality of O.R.C. § 3503.02(D), 28 U.S.C. §§ 1331, 1343, specific subject matter jurisdiction under 42 U.S.C. § 1973gg–9, and supplemental jurisdiction as to state law claims.

Plaintiffs purport at various points in their complaint to be representing the interests of other electors, who, though not parties to this suit, were likewise subjected to challenges of their qualifications. Plaintiffs have not, however, filed a motion for class certification. Thus, any complaint that others, not parties to this litigation, may have, is not before this court.

## DISCUSSION

### I. The National Voting Rights Act Has Not Been Contravened

■ Plaintiffs' first claim for relief alleges a violation of § 1973gg–6(a)(3) of the

VRA, 42 U.S.C. § 1973gg–6(a)(3). That provision, and a related subsection, § 1973gg–6(a)(4), provide:

> In the administration of voter registration for elections for Federal office, each State shall . . .
>
> (3) provide that the name of a registrant may not be removed from the official list of eligible voters except -
>
> (A) at the request of the registrant;
>
> (B) as provided by State law, by reason of criminal conviction or mental incapacity; or
>
> (C) as provided under paragraph (4).
>
> (4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of -
>
> (A) the death of the registrant; or
>
> (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d) of this section.

Plaintiffs assert that "insofar as the procedure utilized by Defendants is seeking to and has removed the names of registered voters from the official list except in accordance with the three exceptions listed above, Defendants' procedure violates the provisions of the applicable Federal law." (Doc. 28 ¶¶ 24–27).

Pursuant to 42 U.S.C. § 1973gg–9(b)(2), an "aggrieved person" may only bring a civil action if an alleged violation is not corrected within a fixed number of days after receipt of notice of the alleged violation. As to plaintiff Bell, denial of the challenge to his qualifications corrected any purported illegality in those challenges or the process by which they were brought, considered, and adjudicated. Thus, his claims in this case are moot. A live case or controversy exists only with regard to the plaintiffs Walcott, Haig,

Ahern, and Fresch, as to whom challenges were sustained.

Congress adopted the VRA "to establish procedures that will increase the number of eligible citizens who register to vote in elections for federal office," while also assuring that "accurate and current voter registration rolls are maintained." 42 U.S.C. § 1973gg(b)(1), (4). To accomplish these dual objectives, the Act simplified the registration process (i.e., by enabling registration simultaneously with acquisition of a driver's license), and assured that, once registered, voters could not be removed from the registration rolls because of a failure to vote or changed addresses. See 42 U.S.C.A. § 1973gg–6(b)(1); *Welker v. Clarke*, 239 F.3d 596, 598 (3d Cir.2001).

Plaintiffs' argument is straightforward: they were on "the official list of eligible voters," as described in § 1973gg–6(a)(3) of the VRA, and they were removed from that list, even though none of the conditions authorized in that section (their own request, conviction of a crime, or mental disability), or its companion, subsection (4) (a "general program . . . to remove the names of ineligible voters" or a change of residence) existed.

Plaintiffs do not dispute the ability of the Board to challenge their qualifications, but such challenge, they contend, had to be made on the date of an election. In support of this proposition, plaintiffs cite *In re Protest Filed by Citizens for Merit Selection of Judges, Inc.*, 49 Ohio St.3d 102, 106, 551 N.E.2d 150 (1990). ("An elector must be 'registered' in order to either vote or sign such petition on the day that he or she decides to exercise the right.").

Defendants, noting that *In re Protest* involved changes in residence, likewise cite that case. They point to its discussion of the basic qualifications to register to vote in Ohio:

R.C. 3501.01(N) defines "elector" or "qualified elector" as "a person having the qualifications provided by law to entitle him to vote." R.C. 3501.01(O) provides: "'Voter' means an elector who votes at an election." Further, R.C. 3501.01(P) states that "'[v]oting residence' means that place of the residence of an elector which shall determine the precinct in which he may vote." R.C. 3503.07 provides: "Each person who will be of the age of eighteen years or more at the next ensuing November election, who is a citizen of the United States, and who, if he continues to reside in the precinct until the next election, * * * shall, unless otherwise disqualified, be entitled to be registered as an elector in such precinct. * * *"

*Id.* at 103–04, 551 N.E.2d 150.

Although, § 1973–6gg(a)(3) read as plaintiffs want it to be read, its apparently absolute language ("each State shall ... provide that the name of a registration may not be removed from the official list of eligible voters except" in the ways prescribed in that section and subsection (4)) would require a finding that the defendants violated the statute because *none of* the plaintiffs had requested removal from the list, been convicted of a crime, been found mentally unfit, or had changed residences.

But that reading overlooks the precondition to being entitled to vote: "continu[ing] to reside in the precinct until the next election." If the residency precondition is not met, a person is not entitled to vote: he is not a "qualified elector." *See id.,* 49 Ohio St.3d at 104, 551 N.E.2d 150 (a person "is not an 'elector' or 'qualified elector' unless his actual current residence is registered with the board of elections.").

Residency within the precinct is a crucial qualification. The Ohio Supreme Court made that clear in *In re Protest.* One simply cannot be a "qualified elector"

entitled to vote unless one resides in the precinct where he or she seeks to cast his ballot. And, "if one never lived within a precinct, one cannot continue to reside in the precinct." He or she is not, and cannot be an "eligible voter," even if listed on the Board's rolls as such.

The VRA does not affect Ohio's ability to condition eligibility to vote on residence. Nor did it undertake to regulate challenges, such as that presented here, to a registered voter's residency *ab initio.* If the action of the Board were to be found to violate § 1973gg–6(a)(3), the effect would be to grant, and then protect, the franchise of persons not entitled to vote.

Aside from the suggestion that Ohio can consider challenges only on election day, plaintiffs do not otherwise address the problems created by their interpretation of the VRA. In their view, apparently, once a person successfully registers at one address, he or she never thereafter can be challenged except when he or she arrives to vote.

I conclude that the VRA cannot be read in this manner. To do so would set the stage for chaos whenever a challenge to one of the most fundamental preconditions to voting - residency within the precinct - arose. The VRA and its manifest purposes, to make enrollment easy and protect the rolls from expungement on the basis of bias or other improper motive, while allowing disqualification when justified, would be frustrated.

Ohio's challenge and disqualification processes, absent discriminatory animus on the part of the Board and other officials (which is not alleged in this case) must be read in pari materia with the VRA. That can best be accomplished by rejecting plaintiffs' reading of § 1973gg–6(a)(3).

Plaintiffs registered to vote. They exercised that franchise, presumably, until

challenged. The ability of the challengers to assert that plaintiffs were not eligible, and had not ever been eligible, and of the Board to consider and resolve that challenge, does not contravene § 1973gg–6(a)(3).

This is not a case in which the challenge arose because the challengers believed that the plaintiffs had moved, thereby rendering themselves ineligible to remain registered. Thus, the issues of change of residence, and the VRA provisions applicable thereto, need not be addressed.

Likewise, this is not a case, despite plaintiffs' contentions to the contrary, that the Board engaged in a "general program" of removing names from the list of eligible voters. The Board received, considered, and adjudicated challenges that came to it from other electors. Except for one of the challenges, there is no suggestion in the record that the Board initiated the challenges, or that they were a sham to conceal an unlawful purging of the electoral rolls for Kelleys Island precinct.

I conclude, therefore, that defendants did not violate the VRA.

## II. Defendants' Did Not Deprive the Plaintiffs of Due Process of Law

Count Four of plaintiffs' complaint alleges thirteen procedural due process "errors" on the part of the Board as it considered and upheld the challenges to plaintiffs' qualifications to remain registered in the Kelleys Island precinct.

■ "No right," the Supreme Court observed in *Reynolds v. Sims,* 377 U.S. 533, 560, 561–62, 84 S.Ct. 1362, 12 L.Ed.2d 506, (1964), "is more precious in a free country than having a voice in the election of those who make the laws under which, as good citizens, we must live." The right to vote is, accordingly, a liberty interest which may not be withheld or withdrawn without due process. *United States v. Texas,* 252

F.Supp. 234, 250 (W.D.Tex.), *aff'd mem. per curiam,* 384 U.S. 155, 86 S.Ct. 1383, 16 L.Ed.2d 434 (1966). An elector cannot be disenfranchised without notice and an opportunity to be heard. *Doe v. Rowe,* 156 F.Supp.2d 35, 48 (D.Me.2001) (denial of the right to vote is a denial of a fundamental liberty); *Raetzel v. Parks/Bellemont Absentee Election Bd.,* 762 F.Supp. 1354, 1358 (D.Ariz.1990) (an election board "cannot disqualify ballots, and thus disenfranchise voters, without ... to an individual whose absentee ballot has been disallowed, advising the individual of the disqualification and the reason therefore, and providing some means for the individual to make his or her position on the issue a matter of record before the appropriate election official.").

In *Doe, supra,* the court described the analysis to be followed where plaintiffs, who were mentally disabled, had been deprived of the right to vote as a result of probate court proceedings at which they were not aware that such loss might occur.

[T]he Court examines the sufficiency of the procedures used to disenfranchise Maine voters by weighing: (1) Plaintiffs' interest in participating in the democratic process through voting; (2) the risk of erroneous deprivation of the right to vote under the procedures used by the State; and (3) the State's interest, including any extra administrative or financial burden on the State from requiring additional procedures. In conducting this inquiry, the Court must focus on striking a balance that will minimize the risk of the State erroneously disenfranchising persons who have the capacity to vote.

156 F.Supp.2d at 49 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

In this case, defendants held three days of hearings, and considered sixty-five chal-

lenges during those proceedings. The Board sustained thirty-one challenges (including those of the four plaintiffs with continued standing to challenge its decision) and rejected twenty-nine challenges. Its four members split 2–2 with regard to five challenges (including that of the Finnegan), which were resolved by Secretary Blackwell. Four previously registered voters changed their registration to another precinct.

The Board notified the plaintiffs in writing of the challenges before the hearing. Plaintiffs had counsel. It appears that some pre-hearing discovery was taken. The challengers appeared, testified, and were cross-examined. The plaintiffs attended and testified. A court reporter kept the record and transcribed the testimony. There is no contention that the Board was partial or biased against the plaintiffs or in favor of the challengers.

Many of the plaintiffs' complaints about procedural insufficiency are inter-related, and will be discussed together.

■ Plaintiffs appear to challenge the adequacy of the notice provided to them—not because it failed to alert them about what was at issue—namely, whether, by virtue of their residency elsewhere, they were not eligible to vote on Kelleys Island. Rather, they complain that the challenges were not submitted under oath. Without verification of the challenge, the plaintiffs contend, they should not have been required to appear and discuss personal attributes of their lives and living arrangements.

I find no merit in this complaint. Plaintiffs have not cited, and I have not found, a case in which a court held that an oath is a prerequisite to calling an informal due process hearing. In any event, the witnesses were all sworn at the hearing.

The hearings did not involve an undue degree of inquiry into plaintiffs' personal lives and affairs. Because where they re-sided was at issue, questions relevant to that inquiry, even if they touched on personal matters, were entirely appropriate. *Cf. McKay v. Thompson,* 226 F.3d 752 (6th Cir.2000) (permissible to require disclosure of social security numbers as a precondition to voter registration).

■ Plaintiffs challenge limitations imposed on the presentation of evidence and the extent of argument. Specifically, plaintiffs allege that they were denied due process and effective representation of counsel because

* their attorney was not allowed to engage in a cross examination which exceeded the scope of the direct examination of witnesses;

* the Board restricted the extent to which their lawyer could argue points of law during the hearings and reserved ruling until the close of proceedings;

* some challengers failed to appear and testify in person;

* some challenges were sustained when the registered voter failed to appear; and

* some challenges were upheld, despite the submission of the challenge under oath, and despite the fact that the voter submitted a sworn affidavit in response.

Plaintiffs can only complain about those aspects of the hearing that affected them. The challengers against the plaintiffs appeared, testified, and were confronted and cross-examined or available for cross-examination, had plaintiffs' counsel so desired. Plaintiffs testified. Their counsel were heard on their behalf.

Limitation of cross-examination to the scope of direct examination was likewise entirely appropriate. The same rule applies in criminal and civil trials; there is no reason it cannot be imposed without of-

fending due process in the less structured context of an election board hearing. Plaintiffs, moreover, have not pointed to any areas of inquiry which they were unable to cover. There is no merit to their complaint about the limits on cross-examination. *See, Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708 (6th Cir.1975) (upholding limits on cross-examination in civil proceeding).

The Board likewise did not offend due process with its handling of rulings on objections and limitations on the time and length of oral argument. If the Sixth Circuit can limit the parties to fifteen minutes per side in a criminal case, certainly the Erie County Board of Elections can prescribe limits on the form, length, and subject matter of arguments before it.

■ Plaintiffs complain that the burden of proof was imposed on them, the standard of proof was indistinct, and insufficient factual findings were pronounced by the Board. I find no merit in these contentions. They best knew what their living arrangements were, and the burden of proof could properly be allocated to them. It appears that the Board applied a preponderance of the evidence standard; certainly their factual findings with regard to each of the named plaintiffs are supported by evidence that showed that plaintiffs, more likely than not, resided off-island.

■ Plaintiffs complain that the Board's decisions are final and not subject to review. The due process clause does not, however, require post-hearing review. *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); *Ohio v. Akron Park Dist.*, 281 U.S. 74, 80, 50 S.Ct. 228, 74 L.Ed. 710 (1930). In any event, this was essentially a factual decision, as to which any scope of review would be extremely circumscribed.

■ Plaintiffs complain that the Board did not explain its rulings and decisions or provide them with findings of fact and conclusions of law, and that they were not informed about the Board's view as to where they resided for voting purposes. As noted, the issue was factual and uncomplicated. A pronouncement of result, even unadorned with reasons and legal conclusions, sufficed to meet the plaintiffs' due process rights. In any event, the Board expressed its reasons with regard to three of the four plaintiffs. There was nothing illogical or inappropriate in the Board's failure to tell the plaintiffs where their voting residence was; its sole inquiry was directed to determining if that residence was on Kelleys Island. Where else it might be was immaterial.

There can be no question that the plaintiffs were accorded due process that acknowledged the fundamental rights at stake.

**III. O.R.C. § 3503.02(D) Did Not Affect the Board's Determinations: Thus, Plaintiffs Were Not Denied Equal Protection**

■ Plaintiffs argue that the Board violated § 1973gg–6(b)(1) of the VRA, which provides:

> Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office -
>
> (1) shall be uniform, non-discriminatory, and in compliance with the Voting Rights Act of 1965.

This claim is related to plaintiffs' equal protection challenge to O.R.C. § 3503.02(D), and the same principles are applicable to both: i.e., if § 3503.02(D) was not applied, or if applied, did not have a discriminatory effect, plaintiffs have no cause of action under the VRA.

Section 3503.02(D) of the Ohio Revised Code provides:

The place where the family of a married man or woman resides shall be considered to be his or her place of residence; except that when the husband or wife have separated and live apart, the place where he or she resides the length of time required to entitle a person to vote shall be considered to be his place of residence.

Plaintiffs claim that this statute is unconstitutional because it treats married citizens differently than unmarried citizens.

At the outset of this litigation, defendants sought and were granted an order directing the plaintiffs to join the Ohio Attorney General as a party to this suit. The basis for that request and order was that O.R.C. § 109.02 provides that "[t]he attorney general shall appear for the state in the trial and argument of all civil and criminal causes in the supreme court in which the state is directly or indirectly interested." Plaintiffs seek a declaration of statutory unconstitutionality, and O.R.C. § 2721.12 requires that in such circumstances and proceeding the Attorney General is to be served with a copy of the complaint.

Such service puts the Attorney General on notice of the suit, and enables her to determine whether to seek leave to join on behalf of the State. *See generally Cicco v. Stockmaster*, 89 Ohio St.3d 95, 99–100, 728 N.E.2d 1066 (2000).

Plaintiffs read these provisions and procedures as making only the Attorney General responsible for defending a challenge to the constitutionality of a state statute—even though such challenge is brought in a federal court, rather than the Ohio Supreme Court, and even though the Attorney General's determination about participating is discretionary.

Although, unfortunately, plaintiffs have not responded to defendants' contention that this court cannot consider the plaintiffs' challenge to § 3503.02(D) in the absence of an appearance by the Ohio Attorney General, I find defendants' contention not well taken. Section 109.02 refers expressly to actions pending in the Ohio Supreme Court, and § 2721.12 requires only service of the complaint, not joinder of the Attorney General for an Ohio court to have jurisdiction to adjudicate a challenge to a statute's constitutionality. Those statutes have no effect on this court's jurisdiction or procedures, and failure to have served or joined the Ohio Attorney General likewise has no effect on this court's jurisdiction.[1]

I also find no merit in the Board's contention that they could not defend the challenge to the statute's constitutionality on its merits without losing their neutral status vis-a-vis plaintiffs. They do not become incapable of performing their duties impartially, even with regard to the plaintiffs, simply because the plaintiffs have raised a challenge to how they performed those duties in response to the challenges brought against the plaintiffs.

 In any event, I conclude that I need not reach the issue of the statute's facial constitutionality because the statute did not play a role with regard to the decisions as to three of the four plaintiffs, and though it was mentioned by one Board member with regard to the fourth plaintiff, I find that it did not play a determinative role in the Board's collective decision to uphold the challenge as to him.

That was plaintiff Walcott. His wife votes in another precinct, in Huron Township, Erie County, Ohio. She is a teacher,

---

1. I note that, if this were a diversity case, which it is not, the issue of mandatory joinder is procedural, not substantive, and federal law would control. *E.g., Krueger v. Cartwright,* 996 F.2d 928, 931 (7th Cir.1993) ("the issues of joinder and whether or not the court should proceed in the absence of an interested party are matters of federal law").

and lives on the Island during the summer. According to her, her husband was on the Island more than he was at her home.

Plaintiff Walcott testified that he moved to the Island in 1995 after he retired. He estimated that he spends about 200 days a year on the Island. He has worked part-time for Island employers. His driver's license lists the Huron Township address. His car is registered there. All the mail goes to that address, and his wife handles most of the bills. He and his wife spend time in the winter in Florida.

One member of the Board expressly relied on § 3503.02(D). Another member expressly declined to rely on that statute. The other two members simply voted to sustain the challenge.

There was sufficient evidence for the Board to find, without regard to the statute, that plaintiff Walcott's permanent residence—among his three places of abode—was in Huron Township. Absent some reason to believe that the statute played a determinative role in the Board's decision, I conclude that it did not.

Plaintiff Keith Haig lives on the Island about 150 days a year, and the remainder he spends at a residence in Bowling Green with his family. He teaches at Penta Technical College in Perrysburg, which, like Bowling Green, is located in Wood County, Ohio. Members of his family have resided and been buried on Kelleys Island. His mail is forwarded to Bowling Green except in the summertime, when he and his family live on the Island once school is over. His Island water bills go to Bowling Green. Haig and his wife filed joint tax returns from Bowling Green, and his driver's license bears his Bowling Green address. He works weekends spring and fall and full time in the summer for the ferry boat line connecting the Island with the mainland.

Board Member Marinko, noting that the case was close, expressly disclaimed any consideration of § 3503.02(D) in reaching his determination that the balance tipped in favor of Wood County, rather than Kelleys Island. (Tr. Vol.1, pp. 262–283) Haig was challenged on the ground that Kelleys Island was not his permanent residence, but rather a temporary one. It is clear that the challenged statute played no role in the finding, which was otherwise supported by sufficient evidence, that plaintiff Haig's permanent residence was in Bowling Green.

Plaintiff Ahner claimed part-time status for his Island trash hauling bills, and had his Island water bills sent to his other residence in Sandusky. His driver's license bears a Sandusky address. A witness testified that he believed that his wife voted elsewhere, but was not certain. Mrs. Ahner is not a registered voter on Kelleys Island. Mr. Ahner works full time on the mainland. He spends about eighty percent of his time in the summer and seventy percent in the winter at his mainland address. His mail goes there; he did not know where his bills for Island utility services were sent, though he assumes they go to the mainland address.

In upholding the challenge to Mr. Ahner, the Board expressly stated that it was not relying on § 3503.02(D). There was an ample basis in the record for the Board to find that Mr. Ahner was not a permanent resident on the Island.

The evidence with regard to plaintiff Fresch shows that he owns a house in Sandusky. He works throughout Ohio from a union hall in Lorain, Ohio, between Sandusky and Cleveland. His driver's license lists Sandusky as his residence. His Kelleys Island bills are sent to Sandusky, but he also gets some mail at a post office box on the Island. His wife, a school teacher, votes in Sandusky, and his children attend school there.

Board member recused himself due to a conflict of interest. The other three members voted without comment to uphold the challenge. As with the other plaintiffs, there was sufficient evidence on which the Board could conclude that plaintiff Fresch's permanent residence was off-Island. There is no reason to believe that § 3503.02(D) played a role in their determination.

Plaintiffs point out that each plaintiff was asked about his wife's polling place. The fact that evidence was taken on that subject does not require, or justify, a finding that the fact, which is, in any event, relevant without regard to the statute, was determinative.

Finally, with regard to the Finnegan plaintiffs, whose challenge was upheld by vote of the defendant Secretary Blackwell, there is no indication whatsoever that he based his decision on the challenged statute or their different polling places.

I conclude, accordingly, that it is not necessary to reach the issue of the alleged unconstitutionality of § 3503.02(D). The statute not having been shown to have played a role in the Board's decisions, no violation of the VRA's anti-discriminatory clause could have occurred.

## IV. The Claim of Noncompliance With O.R.C. § 3503.21(C) Raises Only a State–Law Claim, as to Which Jurisdiction is Declined

Plaintiffs claim that the Board failed to comply with the provisions of O.R.C. § 3503.21(C), prescribing procedures to be followed after the cancellation of a voter's registration.

This claim raises solely issues of state law, and involves the construction and application of a specialized state statute. Having decided all federal claims in defendants' favor, I decline to exercise supplemental jurisdiction with regard to plaintiffs' remaining claims.

## CONCLUSION

For the foregoing reasons, I find that the defendants are entitled to summary judgment on the plaintiffs' federal claims. It is, therefore,

ORDERED THAT defendants' motions for summary judgment be, and the same hereby are granted as to all claims with prejudice, except plaintiffs' state-law claim with regard to O.R.C. § 3503.21(C), which is dismissed for want of jurisdiction, without prejudice.

So ordered.